273 So.2d 316 (1973)
MARINE CHARTERING (GULF) LTD.
v.
BOLAND MACHINE & MANUFACTURING CO., INC.
No. 5276.
Court of Appeal of Louisiana, Fourth Circuit.
February 6, 1973.
*317 Leach, Grossel-Rossi & Paysee, F. A. Courtenay, Jr., New Orleans, for plaintiff-appellant.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Herschel L. Abbott, Jr., New Orleans, for defendant-appellee.
Before LEMMON, STOULIG and BOUTALL, JJ.
LEMMON, Judge.
Marine Chartering (Gulf) Ltd. appealed from a judgment dismissing its suit for damages incurred when Boland Machine & Manufacturing Co., Inc. allegedly refused to perform vessel repairs in accordance with its accepted bid. The principal issue on appeal is whether plaintiff accepted defendant's offer to perform the repairs.
Plaintiff chartered the M/V La Molinera, which suffered hurricane damage in the Gulf of Mexico. Plaintiff brought the vessel into port at New Orleans and had some emergency repairs performed. Anxious to place the vessel back in service, plaintiff then verbally requested three companies on the morning of November 6, 1969 to examine the vessel and bid on completion of the repairs. When written bids were submitted and opened the same afternoon, plaintiff's vice-president announced the amount and estimated time of completion contained in each bid. Since defendant was the low bidder, he thanked and dismissed the representatives of the other two companies.
Conflicting versions of the occurrences at this point and thereafter form the basis of this controversy.
Defendant's bid contained a stipulation that "payment covering these repairs shall be made by the owners to the contractor prior to sailing of vessel from contractor's yard." According to plaintiff's version, its vice-president awarded the contract to defendant in accordance with these terms, but defendant's representative returned shortly with a letter stating that the amount of the bid must be placed in escrow before it commenced repair work. Plaintiff then proceeded to make arrangements with the next lowest bidder, who performed the repairs for $30,903.00, or $8,253.00 more than defendant's bid. Plaintiff subsequently instituted this suit for the additional amount it was required to pay for the repairs.
On the other hand, defendant's version is that no contract was ever awarded in accordance with its original bid. In a conference following the opening of the bids, plaintiff's vice-president examined the low bid in detail. He then requested that the terms be changed to specify payment within 30 days after completion of repairs, as was the customary practice in the New Orleans area. Not having the authority to alter the bid terms, defendant's representative placed a telephone call to his superintendent, who spoke to plaintiff's officers. Since no one in defendant's organization had previous business dealings with plaintiff or had heard of the firm or the ship before, they became suspicious of plaintiff's financial ability and refused this requested change. However, defendant offered to allow plaintiff to submit some assurance of payment or to place the amount of the bid in an escrow account. When plaintiff raised the question of interest on a loan to obtain these funds for placing in escrow, defendant agreed to pay all interest and related expenses.
Defendant insists that it always stood ready to perform at its bid price, but simply *318 wanted assurance of payment. Defendant's management thought that the escrow arrangement (which would entail no additional cost above the bid price) had been acceptable to plaintiff, and was surprised to subsequently learn plaintiff had the repairs performed at the higher bid price.
The trial court found as a fact that plaintiff, after receiving the bids, attempted to obtain more favorable credit terms and thus began new negotiations on the price of the repairs. The court concluded that plaintiff "cannot complain now that the defendant came forward with counterfinancial terms for the payment."
On appeal plaintiff concedes that it raised the question of payment terms, but contends this was no more than an inquiry after it had accepted the bid. Plaintiff argues that once an offer is accepted, subsequent unsuccessful negotiations on change of terms do not vitiate the contract already formed.
We do not dispute this proposition as a general legal principle. However, that principle is not applicable where the original offer was never accepted.
Here, the parties presented conflicting versions of the facts which were necessary to establish that plaintiff had accepted defendant's offer. The trial court accepted the version that there was never an unqualified acceptance of defendant's original offer. Since we cannot find any manifest error in this factual finding upon our examination of the record, we agree with the trial court's conclusion that no contract was ever struck and neither party was ever bound.
To form a contract, the acceptance must conform in all things to the offer. If the acceptance limits, conditions or modifies the offer, it is considered as a new offer and gives the one who made the original offer the right to withdraw it. C.C. arts. 1805, 1806.
Inasmuch as plaintiff immediately equivocated on the payment terms of the original offer, its request for payment within 30 days constituted a new offer, which was rejected, as was defendant's counter-offer of the escrow proposal. There was therefore never a contract formed.
The judgment is affirmed.
Affirmed.